UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHAD J. PETITPAS,
    *Plaintiff*,

v.

ROBERT MARTIN, *et al.*,
    *Defendants*.

No. 3:17-cv-1281(JAM)

**INITIAL REVIEW ORDER**

Plaintiff Chad J. Petitpas is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against various prison officials. In essence, he contends that these officials retaliated against him in various ways following his prior successful litigation against the Department of Correction. The named defendants are Warden Robert Martin, Deputy Warden William Colon, Captain Robert Judd, Officer Lesniewski and Officer Kurtzenacker. After initial review, I conclude that the complaint should proceed on plaintiff's Fourth Amendment claim against Lesniewski and on plaintiff's First Amendment retaliation claim against Martin, Colon, Lesniewski, and Kurtzenacker.

**BACKGROUND**

The following allegations from plaintiff's complaint are accepted as true for purposes of this ruling. On June 13, 2017, plaintiff settled a federal civil rights action. On June 14, 2017, pursuant to the settlement agreement, plaintiff was transferred to Brooklyn Correctional Institution. Upon his arrival, Lesniewski, who was the phone monitor officer at Brooklyn, began telling people that plaintiff had gotten three officers fired and two others demoted as a result of the prior lawsuit. He also made clear his disagreement with the portion of the settlement

1

agreement providing that plaintiff could not be transferred without his written consent. Other officers advised plaintiff to avoid Lesniewski, who was scheduled to retire the following week. Doc. #1 at 6-7.

On June 27, 2017, Lesniewski removed from plaintiff's master file two documents authorizing plaintiff to correspond with two other inmates. Lesniewski then issued plaintiff a Class A disciplinary ticket for corresponding with other inmates. In the disciplinary report, Lesniewski stated that plaintiff has won a lawsuit against the Department of Correction and that three officers had been fired and two demoted as a result of the suit. The comment was not relevant to the disciplinary charge and included to ensure that any hearing officer would be biased against plaintiff. *Id.* at 7.

Defendant Martin refused to investigate the charge. He offered plaintiff two options—plead guilty or fight the charge from restrictive housing at Corrigan Correctional Institution. Plaintiff pled guilty. *Ibid.*

Plaintiff spoke to defendants Judd and Colon about harassment by Lesniewski regarding personal matters he included in correspondence and conversations with his attorney. Plaintiff provided evidence that Lesniewski was monitoring plaintiff's confidential legal calls. Lesniewski had allegedly altered the privacy setting and name associated with counsel's phone number to allow him to listen to the legal calls. The name Lesniewski substituted was the name of a gang member. He also allegedly changed plaintiff's PIN number to a gang code. *Id.* at 8.

On July 8, 2017, defendant Kurtzenacker removed 45 music CD's from plaintiff's cell. Although correctional directives only permit inmates to have only 20 CD's, plaintiff had been awarded 30 CD's in a prior settlement with the security division of the department of correction and had been allowed to have the 45 CD's since 2012. Plaintiff was not issued a disciplinary

charge for possessing the CD's and was not given a receipt for the $800.00 value of the CD's. *Ibid.*

On July 10, 2017, plaintiff spoke to Martin and Colon regarding the CD's. Colon stated that because plaintiff had more than 20 CD's, all of the CD's were considered contraband. Martin stated that the CD's had been confiscated during a shakedown. Plaintiff disputed the accuracy of Martin's statement and questioned the lack of a disciplinary report or receipt. Martin told plaintiff to "go write the court." *Id.* at 9.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

First, I address whether plaintiff's allegation that Lesniewski monitored plaintiff's attorney-client communication plausibly states a constitutional violation. Plaintiff claims that the monitoring constitutes a violation of the Fourth Amendment.[1] It is at least debatable whether

---

[1] Plaintiff also alleges a violation of the Sixth and Fourteenth Amendments. But Sixth Amendment rights attach when criminal proceedings have commenced against an accused. *See United States v. Mills*, 412 F.3d 325, 328 (2d Cir. 2005). Here, plaintiff has not alleged that, at the time of the alleged monitoring, he was a defendant in a pending criminal prosecution. *See, e.g., McIntosh v. United States*, 2016 WL 1274585, at *22. (S.D.N.Y. 2016).

such non-consensual monitoring of a prisoner's telephone call with legal counsel amounts to a violation of the Fourth Amendment. *See, e.g., Lonegan v. Hasty*, 436 F. Supp. 2d 419, 433-39 (E.D.N.Y. 2006); *In re State Police Litig.*, 888 F. Supp. 1235, 1255-56 (D. Conn. 1995); *but see United States v. Lentz*, 419 F. Supp. 2d 820, 827-29 (E.D. Va. 2005) (no attorney-client privilege if prisoner knows conversation is being recorded). Accordingly, plaintiff's Fourth Amendment claim will proceed against Lesniewski.

Plaintiff further alleges that essentially all of the actions taken by all named defendants violated the Eighth Amendment. The facts alleged in the complaint do not sound in traditional Eighth Amendment doctrine, such as excessive use of force or deliberate indifference to serious medical needs. *See, e.g.*, *Sands v. Mudano*, 2017 WL 242466, at *2 (D. Conn. 2017). Rather, plaintiff's allegations more fairly describe unfair treatment, not cruel or unusual punishment. Accordingly, I conclude plaintiff has failed to state a claim under the Eighth Amendment.

Although plaintiff does not expressly allege that defendants retaliated against him in violation of his First Amendment rights, the complaint alleges acts that—if true—might amount to retaliation in violation of the First Amendment. To establish a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

As to the first of these elements, plaintiff has described in his complaint two forms of protected activity: (1) filing a lawsuit, *see, e.g.*, *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731

---

Accordingly, he cannot show that any monitoring of his telephone calls with counsel amounted to a violation of the Sixth Amendment. Apart from the fact that the Fourth Amendment is incorporated against state actors by means of the Fourteenth Amendment, I do not understand plaintiff's Fourteenth Amendment claim to allege any actionable wrong that is not otherwise within the scope of the Fourth Amendment.

(S.D.N.Y. 2002), and (2) making oral complaints to correction officers. *See, e.g.*, *Tirado v. Shutt*, 2015 WL 4476027, at *4 (S.D.N.Y. 2015).

As to the second element, plaintiff has alleged adverse action by all but one of the defendants. Lesniewski took adverse action against plaintiff by allegedly monitoring his attorney-client telephone calls, by altering phone record identification data, and by removing from his file paperwork permitting him to correspond with certain inmates and then citing plaintiff for corresponding with those inmates. Kurtzenacker, Colon, and Martin took part in or approved the confiscation of plaintiff's CD's. Plaintiff has not alleged that defendant Judd took any retaliatory action.

As to the third element, plaintiff has alleged a plausible causal connection between the adverse actions and the protected activity. At this stage in the case, an allegation of close temporal proximity between the adverse action and the protected activity is sufficient to state a plausible causal connection. *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Here, plaintiff alleges that all of the adverse actions occurred within one month of his lawsuit settlement and arrival at Brooklyn Correctional Institute and that his CD's were taken the day after he complained about Lesniewski.

In addition, plaintiff alleged that Lesniewski made "comments" to plaintiff about the settlement agreement and informed others that plaintiff's lawsuit resulted in the dismissal of three correction officers and the demotion of two other officers. Doc. #1 at 7. Construing plaintiff's complaint liberally, it can be inferred that defendants Kurtzenacker, Colon, and Martin were among those whom Lesniewski told about the lawsuit. *Espinal*, 558 F.3d at 130. Given the foregoing, I conclude that plaintiff has sufficiently alleged a causal connection between the

defendants' adverse actions and plaintiff's protected activity. Plaintiff's First Amendment claim will therefore proceed against defendants Martin, Colon, Lesniewski, and Kurtzenacker.

A substantial question also exists whether plaintiff exhausted his administrative remedies prior to filing this lawsuit and as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Because I do not yet have enough information about whether plaintiff has sought to exhaust his administrative remedies and whether his claim would be subject to the exhaustion requirement, it would be premature at this time for me to consider whether to dismiss plaintiff's claim for failure to exhaust administrative remedies. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (noting that "inmates are not required to specially plead or demonstrate exhaustion in their complaints," but that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement").

#### CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims against defendant Judd are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(2) The Clerk shall verify the current work addresses for defendants Martin, Colon, Lesniewski, and Kurtzenacker with the Department of Correction Office of Legal Affairs. The Clerk shall then mail waiver of service of process request packets containing the Complaint to defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall

be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

    (3)     The Clerk shall send written notice to plaintiff of the status of this action, along with a copy of this Order.

    (4)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

    (5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the Federal Rules.

    (6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the Court.

    (7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

    (8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

    (9)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

  (10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

  It is so ordered.

  Dated at New Haven, Connecticut, this 25th day of October 2017.

                */s/ Jeffrey Alker Meyer*
                Jeffrey Alker Meyer
                United States District Judge